IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

SUSAN DUNN and HEIDI MASUNAGA,)
                              )
            Plaintiffs,        )
                              )      No.  CV-09-1259-HU
      v.                       )
                              )
REYNOLDS SCHOOL DISTRICT NO. 7)
a political subdivision of the)
State of Oregon and public     )      OPINION & ORDER
body corporate, and ROBERT     )
FISHER, an individual,         )
                              )
            Defendants.        )
_____)

James Brown
215 SW Washington St., Ste. 202
Portland, Oregon 97204

       Attorney for Plaintiffs

Barrett C. Mersereau
Peter R. Mersereau
MERSEREAU & SHANNON, LLP
1 SW Columbia St., Ste. 1600
Portland, Oregon 97258

       Attorneys for Defendants

1 - OPINION AND ORDER

HUBEL, Magistrate Judge:

Plaintiffs Susan Dunn and Heidi Masunaga bring claims for violations of civil rights under 42 U.S.C. § 1983, wrongful discharge, breach of contract, and wage claims, against the Reynolds School District No. 7 and its former superintendent, Robert Fisher. Defendants move for summary judgment as to all claims against them, as well as for qualified immunity for Fisher. All parties have consented to entry of final judgment by a Magistrate Judge in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c)). For the reasons set forth below, I grant defendants' motion, in part, and deny, in part.

## FACTS

In the spring of 2009, plaintiff Susan Dunn was the principal of Davis Elementary School. She had a three-year contract that commenced July 1, 2008, and was scheduled to end on June 30, 2011. Pl.'s Resp. Def.'s Concise Statement Material Facts at ¶ 8; Def.'s Reply Pl.'s Concise Statement Material Facts at ¶ 1. Plaintiff Heidi Masunaga was the principal for Alder Elementary School, and also had a three-year contract that commenced on July 1, 2008 and was scheduled to end on June 30, 2011. Id. Both schools are part of defendant Reynolds School District No. 7 ("the District"), in Fairview, Oregon.

As part of their compensation, the District provided group health insurance to the plaintiffs. In addition, the District had a medical reimbursement program. In order to obtain the reimbursement benefit, the plaintiffs and other District employees submitted documents reflecting health expenses, and District administrators evaluated the documents before reimbursing the

2 - OPINION AND ORDER

plaintiffs.  The "Memorandum of Agreement between Reynolds School District and Reynolds Administrators' Association For 2003/04, 2004/05, 2005/06" outlined the reimbursement benefit as,

> A.   Medical Insurance:
>
> .  .  .  .
>
> 3.   The unused monthly portion of the budgeted insurance/TSA benefit shall remain in a pool for use by individual administrators to recover deductible or co-pay costs incurred under the above insurance plans.

Decl. Barrett Mesereau Ex. 9, at 2.  The "Memorandum of Agreement between Reynolds School District and Reynolds Administrators' Association For 2006/07, 2007/08, 2008/09" was more specific about the benefit,

> 3.   Administrators carrying individual or family medical insurance through the District may be reimbursed for the following:
>
> a.   Deductible costs for required medical procedures and required prescriptions covered by the insurance policy (e.g. insurance pays only 80%, reimbursable is remaining 20%).
>
> b.   Co-pay costs for medical visits or hospitalization (e.g. $15.00 fee for a doctor appointment).
>
> Reimbursement is not available for:
>
> a.   Alternative medical procedures or healthy life style activities not covered by the insurance policy (e.g. spa, health club, vitamins, etc.).
>
> b.   Surgery or medical procedures, or prescriptions of an elective or optional nature even if covered by the insurance policy (e.g. cosmetic surgery).

Id., Ex. 10, at 2.

On November 28, 2008, defendant Robert Fisher, the superintendent of the District, sent the plaintiffs a letter stating, in part,

> The district made a series of errors in administering the

3 - OPINION AND ORDER

program.

- The district did not pool the unused benefit dollars.
- The district paid for elective procedures.
- The district paid claims from documents that did not contain sufficient information to determine if the payment covered a co-payment or deductible.
- The district paid claims for non-covered items – effectively expanding the coverage to all out-of-pocket medical expenses.

These errors are serious.  They involve questionable use of taxpayer dollars and they serve as an example of the district's poor management practices.  Being proactive, I have board and legal support to:

- Seek investigation into the practices to determine if any crime has been committed in the administration of the program.
- Demand and pursue collection of all payments made to administrators for elective procedures.
- Bill and pursue collection of all payments for dental services, eyewear and contact lenses, and goods and services that were not covered by the insurance plan or the reimbursement program.

Id. Ex. 3, at 1; Ex. 4 at 1.  The letter indicated that a review had been conducted of all records from July 1, 2002, through November 28, 2008.  In Dunn's case, the letter indicated she was "paid $3,508.40 in error."  Id., Ex. 3, at 2.  In Masunaga's case, the letter indicated she was "paid $5,755.51 in error."  Id., Ex. 4, at 2.  Both letters asked the plaintiffs to "[p]lease review the enclosed copies of claims paid in error and respond to the district regarding your plans for repayment by December 17, 2008."  Id., Ex. 3, at 2; Ex. 4, at 2.

According to plaintiffs, Fisher told them "don't complicate your lives by getting attorneys mixed up in this because . . . I'm contacting the district attorney and this is a serious matter and it involves public funds and misuse of public funds."  Decl. Robert Brown, Att. 8, at 4.  Dunn and Masunaga, however, retained counsel, who wrote in a letter dated January 12, 2009, "It has been reported

4 - OPINION AND ORDER

to me that the district's superintendent has intimated to one or more of the district's administrators it would not be in their best interests to involve legal counsel regarding these matters." Id., Att. 9, at 1; Att. 10, at 1.

The letter also formally alerted the District that plaintiffs did not believe the district had a legal right to demand the overpayments back, and asked that the Districts demands regarding the alleged overpayments cease and desist.

On April 3, 2009, Fisher sent Dunn and Masunaga letters restating the District's demands,

> My review indicates that if you do not refund the medical expense reimbursement that was improperly approved, you may be in violation of ORS Chapter 244, as well as TSPC Standards for Competent and Ethical Performance of Oregon Educators, particularly OAR 584-020-0035(2)(a), which states that educators must "adhere to the conditions of a contract or the terms of appointment;" and (e) to "not use the district's or school's name, property, or resources for non-educational benefit or purposes without approval of the educator's supervisor of the appointing authority" – in this case the approval of the Board of Directors, which adopted the administrators' agreement and its terms.
>
> Since you have not complied with my request for you to reimburse the District during the last four months, on behalf of the District, I am now giving you the following directives.
>
> You are to refund to the District the total . . . that was paid to you as reimbursement for non-covered medical expenses.
>
> You are hereby directed further to submit a check to my office for the full amount . . . made out to the District, by April 22, 2009.
>
> Failure to repay the reimbursement not authorized under the terms and conditions of the Board-approved administrators' agreement will be considered insubordination on your part, because you will be willfully disobeying an order that the superintendent of the Reynolds School District has a right to give; and, you will be considered also in neglect of your duties, including your duty to accept only that compensation from

5 - OPINION AND ORDER

the District which was authorized by the Board-approved administrators' agreement.

It is extremely important for you to know, to be informed, and to be aware that both insubordination and the neglect of duty are grounds for dismissal of a contract administrator under ORS 342.865(1). Therefore, it is my hope that you will comply with this directive.

Id. Att. 11, at 1-2; Att. 12, at 1-2.

On April 22, 2009, both plaintiffs submitted letters of resignation to Fisher, effective June 30, 2009. Mersereau Decl. Ex. 1, at 1; Ex. 2, at 1. Both plaintiffs mentioned in their letters that they had many unused vacation days and expected to be paid for them.

Fisher sent a follow-up letter on April 23, 2009, which stated, in part,

On April 22, 2009, you willfully disobeyed my order and did not repay the District. . . which you have been notified would be considered insubordination.

Before I make my recommendation to dismiss you from the Reynolds School District to the Board of Education, I am scheduling a pre-termination hearing for you to respond to the potential charges leading to your dismissal. The hearing will be on Tuesday, April 28, 2009 . . . in my office.

Id. Att. 13, at 1, Att. 14, at 1.

School board member Shelly Chase testified that her understanding regarding Fisher's recovery method was that "if it wasn't paid back, then the employees would be . . . [t]erminated." Id. Att. 19, at 2. Later, Chase was "told [Dunn and Masunaga] had not paid the money and [Fisher] was going to terminate them." Id., Att. 19, at 4. Another school board member, Richard Phelps, testified that "if [Fisher] recommended [termination] to the board, the board would stand behind it." Id., Att. 20, at 2. Yet another school board member, Donna Edgley, characterized Fisher's strategy,

6 - OPINION AND ORDER

"It was, from the very, very beginning, this is what we're doing and they're going to pay it back or they're not going to work here. And that was it."  Id., Att. 22, at 2.

Despite the resignation letters, Fisher moved forward and held the scheduled April 28, 2009 pre-termination hearing.  There are few details about what happened at the pre-termination hearing.  On May 4, 2009, Fisher wrote the plaintiffs again:

> Please be advised that I have accepted your resignation effective June 30, 2009, in lieu of moving forward with a recommendation for dismissal.
>
> After reflecting upon your comments in your April 22, 2009, letter and the comments made at the hearing, I see no reason to continue moving toward termination, especially since you submitted your letter of resignation . . . .
>
> Now that I have accepted your resignation, please be advised of the following:
>
> 1. You are required to use all of your unused vacation days, which means your last workday will be May 20, 2009 . . . .
> 2. Please remove all of your personal belongings before May 20, 2009, so that you will not return to your school after your last day of work.
> 3. Unless you have received prior approval . . . you are not to be on any school campus after your last workday.
> 4. If you prefer to move your resignation date prior to May 20, 2009, and receive payment for your unused vacation pay on your last day of work, please submit a letter to Ken Richardson to that effect by 4:00 pm on Wednesday, May 6, 2009.

Brown Decl. Att. 15, at 1; Att. 16, at 1.  Fisher testified that he changed the last day of employment for the principals in order "to save money for the district."  Att. 23, at 5.

For reasons that are not addressed, Fisher only held the job of superintendent for 14 months.  Att. 23, at 4.  He left the position the following school year.

///

7 - OPINION AND ORDER

**STANDARDS**

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'" Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. T.W. Elec. Serv., 809 F.2d at 630-31.

If the factual context makes the nonmoving party's claim as to

8 - OPINION AND ORDER

the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Id.; In re Agricultural Research and Tech. Group, 916 F.2d 528, 534 (9th Cir. 1990); California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

**DISCUSSION**

Plaintiffs brought claims for a violation of their civil rights under 42 U.S.C. § 1983, wrongful discharge, breach of contract, and wage claims under Oregon law. Plaintiffs also seek injunctive relief, in the form of reinstatement in their former positions and expungement of all references to their terminations and the surrounding accusations from the District's records. Before the court is the District's motion for summary judgment on all of plaintiffs' claims except for injunctive relief. Defendants also seek to establish that defendant Fisher is entitled to qualified immunity on the § 1983 claims.

I.   Constructive Discharge

The parties agree that a threshold issue is whether the plaintiffs were constructively discharged. The standard differs under federal and state law, and plaintiffs bring claims under both.

A.   Federal

When a plaintiff brings a § 1983 claim based on constructive discharge, the court evaluates the alleged constructive discharge under federal law. See e.g. Knappenberger v. City of Phoenix, 566 F.3d 936, 940-41 (9th Cir. 2009). In the Ninth Circuit, the standard for constructive discharge differs depending on the

9 - OPINION AND ORDER

circumstances.   In situations where an employee quits because of the conditions of her working environment, the inquiry is whether "working conditions bec[a]me so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" Poland v. Chertoff, 494 F.3d 1174, 1184 (9th Cir. 2007). A constructive discharge does not always, however, demand "unendurable working conditions." See e.g. Kalvinskas v. Cal. Institute of Tech., 96 F.3d 1305 (9th Cir. 1996).   The Ninth Circuit also recognizes "employment claims based on a theory of coercion," where "a resignation may be found involuntary if, from the totality of the circumstances, it appears that the employer's conduct in . . . obtaining the resignation effectively deprived the employee of free choice in the matter." Knappenberger, 566 F.3d at 941 (citations omitted).   In such situations, "resignation may be involuntary and constitute a deprivation of property for purposes of a due process claim in the absence of intolerable working conditions." Id.

In Kalvinskas, a long-time employee was effectively given a choice between retiring and receiving his pension or remaining employed, but having the disability benefits he was receiving reduced to nothing. 96 F.3d at 1306. The Ninth Circuit held that, because "a reasonable person in [his] position would feel he had no choice but to retire," Kalvinskas's retirement was involuntary for purposes of the ADEA's prohibition of retirement plans that require or permit involuntary retirement. Id. at 1308. The court deemed Kalvinskas's choice to be involuntary not because of discriminatory or intolerable working conditions, but rather, "because of the coercion inherent in the choice between retirement and a complete

deprivation of income." Id.; see also Lojek v. Thomas, 716 F.2d 675, 683 (9th Cir. 1983) (suggesting an employee coerced into resigning could demonstrate he left his employment involuntarily).

Here, the evidence in the record shows that the plaintiffs were given the ultimatum to pay thousands of dollars in a short period of time, or be fired. There was no mechanism to contest the validity or legality of the ultimatum. Plaintiff Dunn testified that "if one is fired, that's a big black mark on your record" and "you are not going to get another job." Brown Decl. Att. 7, at 7. Plaintiff Masunaga testified, "Rather than being fired, I resigned . . . [b]ecause I knew I needed a job, and I was not going to get a job if I was going to be fired from the school district." Brown Decl. Att. 8, at 4.

Given the coercion inherent in the ultimatum to pay a substantial sum of money or be fired, and based on the evidence of the negative effects of being fired, I find that, from the totality of the circumstances, there is a question of fact whether the District's conduct in obtaining the resignation of the plaintiffs deprived Dunn and Masunaga of free choice in the matter, effectively constructively discharging plaintiffs under federal law.

B.  Oregon Law

Plaintiffs argue that under Sheets v. Knight, 308 Or. 220, 779 P.2d 1000 (1989), an individual has been constructively discharged if she resigned rather than be fired. The District responds that Sheets was expressly overruled by McGanty v. Stadenraus, 321 Or. 532, 557, 901 P.2d 841,856-57 (1995), which holds,

to establish a constructive discharge, a plaintiff must

11 - OPINION AND ORDER

> allege and prove that (1) the employer intentionally created or intentionally maintained specified working condition(s); (2) those working conditions were so intolerable that a reasonable person in the employee's position would have resigned because of them; (3) the employer desired to cause the employee to leave employment as a result of those working conditions or knew that the employee was certain, or substantially certain, to leave employment as a result of those working conditions; and (4) the employee did leave the employment as a result of those working conditions.

The Oregon Supreme Court, however, has held that McGanty did not overrule Sheets with respect to the relevant issue. See Stupek v. Wyle Laboratories Corp., 327 Or. 433, 439, 963 P.2d 678, 681 (1998). Although the Stupek court quoted the McGanty formulation of the elements of constructive discharge, it also cited Sheets for the proposition that "[a] forced resignation may support a claim for wrongful discharge." Id. The Stupek court explained,

> Where the employee unconditionally has been told 'resign today or be fired,' the employer has decided that the employment relationship is at an end and that the employee shall leave. The employee merely selects the manner in which the employer's will is accomplished. Under such circumstances a fact finder may find that a 'resignation' was a discharge.

Id. (citing Sheets, 308 Or. at 227). In so explaining, the Supreme Court effectively held that Sheets offers an alternative to McGanty's requirement that working conditions were so intolerable that a reasonable person in the employee's position would have resigned because of them.

Here, the evidence demonstrates that Fisher insisted Dunn and Masunaga would have to pay substantial sums of money to pay back allegedly erroneous reimbursements they had received, if they wanted to continue working for the District. Pay us back or be fired. By April 23, 2009, Fisher knew Dunn and Masunaga were substantially certain to leave their employment, one way or

12 - OPINION AND ORDER

another, because of the condition he'd imposed. No longer
requesting payment, he wrote,

> On April 22, 2009, you willfully disobeyed my order and
> did not repay the District the [money], which you have
> been notified would be considered insubordination.
> Before I make my recommendation to dismiss you from the
> Reynolds School District to the Board of Education, I am
> scheduling a pre-termination for you to respond to the
> potential charges leading to your dismissal.

Brown Decl. Att. 13, at 1; Att. 14, at 1. In her words, Masunaga
resigned "in lieu of being terminated from my position." Brown
Decl. Att. 8, at 4. Dunn resigned "[b]ecause if [she] didn't
resign [she] would be fired." Brown Decl. Att. 7, at 7.

Viewed in the light most favorable to the nonmoving
plaintiffs, there is an issue of material fact whether a finder of
fact would find that in this case plaintiffs' resignations were
actually discharges. Defendants' motion for summary judgment on
the state law issue is denied.

II.    <u>Violation of Due Process Rights Under the Fourteenth Amendment</u>

In their complaint, plaintiffs allege that "Defendant Fisher,
while acting under color of state law, effected taking of plaintiff
Masunaga's property in violation of her right to due process of
law" by "coercing her resignation . . . . terminating plaintiff's
employment . . . . [and] by depriving plaintiff access to the
judicial process for determination of a matter in dispute between
her and her employer." Compl. ¶ 35. Broadly construed, the
language of the complaint alleges two property interests each: a
property interest in the job of principal and a property interest
in the unused accrued vacation days. In addition, the language of
the complaint alleges a procedural due process violation.

13 - OPINION AND ORDER

A.    Procedural Due Process

The Fourteenth Amendment protects against the deprivation of property or liberty without due process. See Carey v. Piphus, 435 U.S. 247, 259 (1978); Brady v. Gebbie, 859 F.2d 1543, 1547 (9th Cir. 1988).    A § 1983 claim based upon the deprivation of procedural due process thus has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process. Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993).

1.    Property Interest Protected by Constitution

a.    Property Interest in Employment

An employee has a constitutionally protected property interest in continued employment if he has a "reasonable expectation or a 'legitimate claim of entitlement' to it." Brady, 859 F.2d at 1547-48 (quoting Roth, 408 U.S. at 577.).    A legitimate claim of entitlement arises if it is created by existing rules or understandings that stem from an independent source, such as state law. See id. at 1548; see also Trivoli v. Multnomah County Rural Fire Protection Dist. No. 10, 74 Or. App. 550, 554 (1985).    A statute, rule or contract may also confer the property interest. Trivoli, 74 Or. App. at 554.

Here, the District concedes that both plaintiffs had contracts for employment with it from July 1, 2008, through June 30, 2011. Therefore, each had a constitutionally protected property interest in continued employment through the end date of the contracts.

b.    Property Interest in Unused Vacation Days

The Supreme Court has held,

14 - OPINION AND ORDER

> The procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit': To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. Such entitlements are, of course, ... not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . . Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.

Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756 (2005) (internal citations and quotations omitted).

The Ninth Circuit has never considered the precise question of whether accrued leave is the type of property protected by the Fourteenth Amendment. Portman v. County of Santa Clara, 995 F.2d 898, 906 (9th Cir. 1993). The Ninth Circuit declined to answer an analogous question of whether accrued sick leave is protected. Id. at 907. The court noted, however, that in the Sixth Circuit, because deprivation of a specific employment benefit is a loss which is easily defined, "entitlement to accumulated sick leave, although a property interest, is not constitutionally protected." Id. at 906 (citing Ramsey v. Bd. of Education, 844 F.2d 1268, 1272 (6th Cir. 1988).).

In a District of Arizona case analogous to the case at bar, a school principal was asked to resign from her position while under contract. Ordway v. Lucero, No. CV-04-1046-PCT-MHM, 2007 WL 951963, at *1 (D. Ariz. 2007). The principal brought a § 1983 case against the school district, claiming among other things, a violation of her due process rights with regard to non-payment of her accrued sick leave. Id. at *6. The court noted that "the written policy of the District is clear that in order to receive

15 - OPINION AND ORDER

payment for such leave upon separation, the employee must have ten years of continuous service with the District." Id. at *7. Since the principal in the case did not have ten years of service, the court held that the principal did not have a property interest in her unpaid leave. Id.

Here, the Reynolds Personnel Policy entitled "GCDC – Administrator Vacation," dated January 4, 2007, read,

> Vacation When Terminating. Administrators whose contract year runs July 1 through June 30, and who have vacation available as a benefit, will be paid for unused vacation time, not to exceed forty-two days (forty-three days if a leap year is involved).

Brown Decl. Att. 17, at 1.

The clear contractual language creates a property right in the unused vacation days.

### 2. Deprivation of Interest by Government

Again, in the Ninth Circuit, "resignation may . . . constitute a deprivation of property for purposes of a due process claim." Knappenberger, 566 F.3d at 941. A school district, which is a local governmental entity, qualifies as the government for purposes of a § 1983 due process claim. See Plumeau v. Yamhill County School Dist. No. 40, 907 F. Supp. 1423, 1435-36 (D. Or. 1995).

#### a. Deprivation of Employment by Government

I have already held that there is a material issue of fact whether the plaintiffs' resignations were involuntary, and thus a constructive discharge. Defendants do not contest that the employer whose conduct obtained the resignation, Fisher, on behalf of the District, qualifies as the government under this prong of the test.

///

16 - OPINION AND ORDER

b.    Deprivation of Unused Vacation Days

Dunn and Masunaga's resignation letters set an effective date of June 30, 2009, and set forth that they expected to be paid for any unused vacation days in addition to being paid under the contract through June 30.    On acceptance of the resignations, Fisher modified the terms of plaintiffs' resignations, and wrote:

> 1. You are required to use all of your unused vacation days, which means your last workday will be May 20, 2009 . . . .
>
> 4. If you prefer to move your resignation date prior to May 20, 2009, and receive payment for your unused vacation pay on your last day of work, please submit a letter to Ken Richardson to that effect by 4:00 pm on Wednesday, May 6, 2009.

Brown Decl. Att. 15, at 1; Att. 16, at 1.

There are situations in which an employer may legitimately force an employee to use vacation days during a set period.    For example, under FMLA, "an employer may require the employee, to substitute any of the accrued paid vacation leave. . . for [FMLA leave] . . . for any part of the 12-week period of such leave." 29 U.S.C. § 2612(d)(2)(A); see also 29 C.F.R. § 825.207. "The logical purpose underlying the substitution language in the FMLA and accompanying regulations is to protect employers who offer paid . . . leave benefits to their employees from having to provide both the statutory 12 weeks of leave required by the FMLA and the paid leave benefit separately." Strickland v. Water Works and Sewer Bd. of City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001).    By analogy, the District could perhaps argue that it was not required to both pay the plaintiffs through their desired resignation date of June 30, as well as provide a lump sum for unused vacation days after that date.

17 - OPINION AND ORDER

1    The District did not, however, make such an argument, whatever

2  its merits might be on these facts, in the motion.  The District

3  argued first that the plaintiffs had no property interest in their

4  unused vacation days because it wasn't in the contract, and second,

5  that Dunn agreed to take her vacation days before leaving work-both

6  arguments, however, are controverted by evidence in the record.

7  Therefore, on the basis of the arguments in support of the motion,

8  I hold there is an issue of fact whether Fisher, acting on behalf

9  of the District, deprived the plaintiffs of their property right in

10  the unused vacation days.

11            3.  Lack of Process

12    "The base requirement of the Due Process Clause is that a

13  person deprived of property be given an opportunity to be heard at

14  a meaningful time and in a meaningful manner."  Brewster v. Bd. of

15  Educ. of Lynwood Unified School Dist., 149 F.3d 971, 984 (9th Cir.

16  1998).  Depending on the circumstances, the hearing may be held

17  before or after the deprivation, so long as the opportunity to be

18  heard is meaningful.  Id.

19    At times the question of whether a deprivation occurred

20  without due process requires an analysis of whether available state

21  law process can constitute "due process."  Lujan v. G & G Fire

22  Sprinklers, Inc., 532 U.S. 189, 195-97 (2001).  A "common law

23  breach of contract claim provides adequate process for the

24  deprivation of a property right derived from a contract, unless the

25  deprivation constitutes a denial of a present entitlement."  DeBoer

26  v. Pennington, 287 F.3d 748, 750 (9th Cir. 2002).  The Supreme

27  Court has described "present entitlement" as "a right by virtue of

28  which [one is] presently entitled either to exercise ownership

18 - OPINION AND ORDER

dominion over real or personal property, or to pursue a gainful occupation." Lujan, 532 U.S. at 190.

In Lujan, a state agency determined that a subcontractor on a public works project had violated the California Labor Code, and issued notices directing the withholding of payment to the subcontractor. Id. at 191-93. The subcontractor sued the state parties under § 1983, claiming that the issuance of the notices without a hearing violated its due process rights. Id. at 193. The Court held that the subcontractor "ha[d] not been denied any present entitlement," but merely a "payment that it contends it is owed under a contract," which in turn is an interest "that can be fully protected by an ordinary breach-of-contract suit." Id. at 196. (distinguishing the case from situations in which a claimant is denied "a right by virtue of which he was presently entitled either to exercise ownership dominion over real or personal property, or to pursue a gainful occupation"). In summary, the Court stated, "[w]e hold that if California makes ordinary judicial process available to respondent for resolving its contractual dispute, that process is due process." Id. at 197.

### a.   Lack of Process Regarding Employment

Here, defendants moved for summary judgment as to plaintiffs' § 1983 claims on the basis that plaintiffs were not deprived of their employment because they resigned. Defendants did not move against this claim by attempting to show that the process afforded Dunn and Masunaga was adequate.

I have already held there is an issue of material fact whether the defendants deprived the plaintiffs of a property interest in their jobs. The issue remains whether the plaintiffs were given an

19 - OPINION AND ORDER

1  opportunity to be heard at a meaningful time and in a meaningful
2  manner under Brewster.

3      The evidence in the record shows that Fisher held a pre-
4  termination hearing on April 28, 2009.  There are few details in
5  the record about what transpired at the hearing.  Fisher has not
6  established the absence of a material issue of fact whether Dunn
7  and Masunaga were afforded an opportunity to be heard in a
8  meaningful manner.  Accordingly, defendant's summary judgment
9  motion as to this claim is denied.

10          b.  Lack of Process Regarding Vacation Days

11      Under Lujan, plaintiffs' property right in their unused
12  vacation days is easily definable and governed by contract.
13  Plaintiffs allege they were entitled to payment for a specific
14  number of vacation days, presumably with each vacation day worth a
15  certain amount.  Just as in Lujan, this property right can be fully
16  protected by an ordinary breach of contract suit.  Therefore I find
17  that a typical state law breach of contract action would constitute
18  due process.  There is nothing in the record suggesting they were
19  deprived of judicial process.

20      Accordingly, with respect to the claims for accrued vacation
21  days, I grant defendants' motion for summary judgment against the
22  § 1983 procedural due process claims.

23      B.  Subtantive Due Process

24      The substantive component of the Due Process Clause "forbids
25  the government from depriving a person of life, liberty, or
26  property in such a way that 'shocks the conscience' or 'interferes
27  with rights implicit in the concept of ordered liberty.'"  Nunez v.
28  City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) (quoting

20 - OPINION AND ORDER

1  United States v. Salerno, 481 U.S. 739, 746 (1987)); Daniels v.

2  Williams, 474 U.S. 327, 331 (1986) (explaining that substantive due

3  process protects against government power arbitrarily and

4  oppressively exercised). "A threshold requirement to a substantive

5  or procedural due process claim is the plaintiff's showing of a

6  liberty or property interest protected by the Constitution."

7  Wedges/Ledges of Cal., Inc. v. City of Phoenix, 24 F.3d 56, 62 (9th

8  Cir. 1994). Most courts around the country have rejected the claim

9  that substantive due process protects the right to a particular

10 public employment position, and the Ninth Circuit has yet to decide

11 the issue. Engquist v. Oregon Dept. of Agric., 478 F.3d 985, 996-

12 97 (9th Cir. 2007).

13     The Supreme Court has not specified the boundaries of the

14 right to pursue a profession, but has identified it generally. See

15 Conn v. Gabbert, 526 U.S. 286, 291-92 (1999) (stating that there is

16 "some generalized due process right to choose one's field of

17 private employment"). The Court has noted, however, that cases

18 recognizing the right "all deal with a complete prohibition of the

19 right to engage in a calling, and not [a] sort of brief

20 interruption." Id. at 292. The Ninth Circuit has recognized the

21 liberty interest in pursuing an occupation of one's choice. See

22 Dittman v. Cal., 191 F.3d 1020, 1029-30 (9th Cir. 1999). A

23 plaintiff can make out a substantive due process claim if she is

24 unable to pursue an occupation and this inability is caused by

25 government actions that were arbitrary and lacking a rational

26 basis. Sagana v. Tenorio, 384 F.3d 731, 742-43 (9th Cir. 2004),

27 cert. denied, 543 U.S. 1149 (2005); Wedges/Ledges, 24 F.3d at 65.

28 But see Zorzi v. County of Putnam, 30 F.3d 885, 895 (7th Cir. 1994)

21 - OPINION AND ORDER

(holding that this occupational liberty is protected only by procedural due process rights, and not substantive due process).

Almost all of the Ninth Circuit cases recognizing this substantive due process right dealt with government legislation or regulation, and not the acts of a government as an employer, which allegedly prevented the plaintiff from pursuing a specific profession. Engquist, 478 F.3d at 997. Substantive due process claims for a public employer's violations of occupational liberty are limited to extreme cases, such as a "government blacklist, which when circulated or otherwise publicized to prospective employers effectively excludes the blacklisted individual from his occupation, much as if the government had yanked the license of an individual in an occupation that requires licensure." Id. at 997-98. (quoting Olivieri v. Rodriguez, 122 F.3d 406, 408 (7th Cir.1997)). Put another way, "there is substantive due process protection against government employer actions that foreclose access to a particular profession to the same degree as government regulation." Id. at 998.

In Engquist, the plaintiff worked for the Oregon Department of Agriculture. Id. at 990. After a supervisor made repeated statements about planning to fire the plaintiff, during a budget crisis, the supervisor discharged the plaintiff. Id. at 991. After being discharged, the plaintiff applied to roughly 200 jobs, and was not offered a position by any employer. Id. After filing suit against her former employer for violation of her substantive due process rights, the plaintiff presented evidence that her supervisors made defamatory statements about her to two or three others in the industry. Id. at 999. There was no evidence,

22 - OPINION AND ORDER

however, that the defamatory statements were the cause of plaintiff's inability to procure another job in her given field. Id. Therefore, the Ninth Circuit held that the plaintiff "did not present sufficient evidence to sustain her substantive due process claim." Id.

### 1.   Substantive Due Process Claim for Employment

Here, plaintiffs resigned in order to avoid a "black mark" that might have inhibited their abilities to practice their chosen profession. I held, above, that Fisher's conduct in obtaining the resignations may equate to constructive discharge. Thus, the plaintiffs might argue that Fisher's conduct related to their constructive discharge rises to the level of making the plaintiffs unable to pursue their profession. On the other hand, the plaintiffs preemptively resigned, thus avoiding the damaging result of the "black mark" and the corresponding inability to find employment elsewhere as a principal. By analogy to contract law, the plaintiffs mitigated the damage that might have occurred.

The facts of this case are less egregious than those of Enquist, where the plaintiff was fired, the supervisor made defamatory comments to others in the industry, and the plaintiff unsuccessfully applied to two hundred jobs. In this case, the evidence shows only that plaintiffs resigned or were constructively discharged. There is no case law in the Ninth Circuit holding that mere discharge, without more, could foreclose access to a profession to the same degree as a government regulation, and thus constitute a substantive due process violation.

Accordingly, to the extent plaintiffs' claim a violation of substantive due process as to their employment, I grant summary

23 - OPINION AND ORDER

1  judgment to the defendants.

2      2.  Substantive Due Process Claim for Benefits

3      There are no Ninth Circuit cases where a plaintiff has

4  succeeded in asserting a substantive due process claim for the

5  value of lost vacation days, or anything similar, upon termination.

6  Fisher's actions as to the vacation days did not deprive Dunn or

7  Masunaga of property in such a way that shocks the conscience or

8  interferes with rights implicit in the concept of ordered liberty.

9      Accordingly, to the extent plaintiffs claim a substantive due

10 process violation with respect to accrued vacation time, I grant

11 summary judgment to the defendants.

12     In summary, defendants' motion for summary judgment against

13 plaintiffs'

14     (1) procedural due process claims for employment is denied,

15     (2) procedural due process claims for unused vacation days is

16 granted, and

17     (3) substantive due process claims is granted.

18 III. Qualified Immunity

19     With respect to § 1983 claims that involve, as here, a defense

20 of qualified immunity, the United States Supreme Court has stated:

21         Section 1983 provides a federal cause of action against
           any person who, acting under color of state law, deprives
22         another of his federal rights.  42 U.S.C. § 1983.  In
           order to prevail in a § 1983 action for civil damages
23         from a government official performing discretionary
           functions, the defense of qualified immunity that our
24         cases have recognized requires that the official be shown
           to have violated 'clearly established statutory or
25         constitutional rights of which a reasonable person would
           have known.'  Harlow v. Fitzgerald, 457 U.S. 800, 818
26         (1982).

27 Conn v. Gabbert, 526 U.S. 286, 290 (1999).  A defendant is

28 entitled to qualified immunity for his "official conduct so long as

24 - OPINION AND ORDER

1  that conduct is objectively reasonable and does not violate
2  clearly-established federal rights." Cmty. House, Inc. v. City of
3  Boise, Idaho, ___F.3d___ , 2010 WL 3895700, 15 (9th Cir. 2010).

4      I have already held, above, that plaintiffs' § 1983 claims,
5  inasmuch as they intend to state a claim for substantive due
6  process, do not survive summary judgment.  There is no need to
7  analyze qualified immunity for those claims.  The issue, then, is
8  whether defendant Fisher met his burden of establishing that any
9  procedural due process claim raised by this factual record was not
10 clearly established at the relevant time.

11     I have previously noted in this opinion that defendant
12 Fisher's challenge was a challenge to whether a termination
13 occurred only.  Having held there is a question of fact in this
14 regard, and without any challenge to the other aspects of a
15 procedural due process claim, nor to the law in that regard being
16 clearly established at the time of the acts in this case, Fisher
17 has failed to meet his burden of proving that he is entitled to
18 qualified immunity on the § 1983 claims.  His motion is denied in
19 this regard.

20 IV.  Wrongful Discharge under Oregon Law

21     Plaintiffs third and fourth claims for relief are for wrongful
22 discharge under Oregon law, for Dunn and Masunaga, respectively.

23     Under Oregon law, an employer may discharge an employee at any
24 time for any reason unless doing so violates a contractual,
25 statutory, or constitutional requirement.  Babick v. Oregon Arena
26 Corp., 333 Or. 401, 407, 40 P.3d 1059 (2002)(citing Patton v. J.C.
27 Penney Co., 301 Or. 117, 120, 719 P.2d 854 (1986)).  The tort of
28 wrongful discharge is a narrow exception to this general rule. Id.

25 - OPINION AND ORDER

Oregon courts have recognized two circumstances that give rise to the common law tort of wrongful discharge: (1) discharge for exercising a job-related right of important public interest and (2) discharge for complying with a public duty. Babick, 333 Or. at 407, 40 P.3d 1059. Examples of the first category include discharge for filing a worker's compensation claim (Brown v. Transcon Lines, 284 Or. 597, 588 P.2d 1087 (1978)) and resisting sexual harassment by a supervisor (Holien v. Sears, Roebuck & Co., 298 Or. 76, 689 P.2d 1292 (1984)). Examples of the second category include discharge for serving on jury duty (Nees v. Hocks, 272 Or. 210, 536 P.2d 512 (1975)), for reporting patient abuse at a nursing home (McQuary v. Bel Air Convalescent Home, Inc., 69 Or. App. 107, 684 P.2d 21 (1984)), and for refusing to sign a false report regarding a fellow employee's work-related conduct (Delaney v. Taco Time Int'l Inc., 297 Or. 10, 681 P.2d 114 (1984)).

In Oregon, however, the tort of wrongful discharge was not intended to be a tort of general application, but rather an interstitial tort to provide a remedy when the conduct in question is unacceptable and no other remedy is available. Cantley v. DSMF, Inc., 422 F. Supp. 2d 1214, 12220 (D.Or. 2006)(citing Draper v. Astoria School Dist., 995 F. Supp. 1122, 1128 (D.Or.1998))(internal quotation omitted). See also Walsh v. Consol. Freightways, Inc., 278 Or. 347, 351-52, 563 P.2d 1205 (1977). "The underlying purpose of that tort in this state is not to vindicate individual interests of the employee by assuring that he or she receives the maximum possible recovery, but rather to protect important public policies by punishing conduct that thwarts those interests." Draper v. Astoria Sch. Dist., 995 F. Supp. 1122, 1130 (D.Or. 1998). Thus, a

26 - OPINION AND ORDER

claim for common-law wrongful discharge is not available in Oregon
if (1) an existing remedy adequately protects the public interest
in question and (2) the legislature has intentionally abrogated the
common-law remedies by establishing an exclusive remedy regardless
whether the courts perceive that remedy to be adequate. Olsen v.
Deschutes Cnty., 204 Or. App. 7, 14, 127 P.3d 655 (2006).

When determining whether the plaintiff may pursue both a
common law claim for wrongful discharge and a § 1983 claim arising
from the same facts, "the question is not whether the existing
remedy [under § 1983] is 'the best possible remedy' or 'identical
to the tort remedy' but merely whether it is sufficient to
'adequately protect the employment related right.'" Draper, 995 F.
Supp. at 1134. Section 1983 generally provides an adequate remedy
to protect the public interest in certain employment-related rights
of a public employee and, accordingly, has operated to dismiss the
plaintiff's wrongful discharge claims in those cases on summary
judgment or in response to motions to dismiss. See, e.g., Shultz
v. Multnomah Cnty., No. 08-CV-886, 2009 WL 1476689, at *12 (D.Or.
May 27, 2009); Baynton v. Wyatt, 411 F. Supp. 2d 1223 (D.Or. 2006);
Carlton v. Marion Cnty., No. 03-CV-6202, 2004 WL 1442598 (D.Or.
Feb. 19, 2002); Minter v. Multnomah Cnty., No. 01-CV-352, 2002 WL
31496404 (D.Or. May 10, 2002).

In Baynton, the plaintiff was a human resources manager for
defendant the Port of Portland. 411 F.Supp.2d at 1224. The Port
performed a reorganization of labor, after which plaintiff was
asked to assume additional duties. Id. Plaintiff's supervisor
also discussed with her many policy issues, including public status
and management of resources, possible discrimination against

27 - OPINION AND ORDER

African American employees, unequal pay increases, compensation for public employees, and pay increases for politically-connected employees. Id. at 1224-25. Plaintiff was subsequently fired. Id. at 1225. Plaintiff brought claims for wrongful discharge and under § 1983. Id. Defendant moved to dismiss the wrongful discharge claim on the basis that plaintiff already had an adequate statutory remedy under § 1983. Id. Plaintiff argued that she may not have an adequate remedy under § 1983 depending on the facts proven in each claim and the defenses raised. Id. Judge King held that "a plaintiff suing under § 1983 for First Amendment retaliation has the same remedies as under her wrongful discharge claim, and the analysis does not require the court to determine the merits of the claim; rather the court evaluates whether the claim, if proven, provides an adequate remedy." Id. The court held the plaintiff's remedy under § 1983 was the same, if not better, than it would be under the wrongful discharge claim. Id. On that basis, the court dismissed the wrongful discharge claim. Id.

Here, if proven, Dunn and Masunaga's § 1983 claim provides an adequate remedy. Therefore, the plaintiffs may not pursue both claims. Accordingly, I grant the District's motion for summary judgment as to the claims for wrongful discharge.

V.   Breach of Contract

Plaintiffs' fifth, sixth, seventh, and eighth claims for relief are for breach of contract related to pay for unused sick days and for breach of the implied covenant of good faith and fair dealing.

A.   Unused Sick Pay

The District argues that there is no provision in the

28 - OPINION AND ORDER

Administrator Agreements that provides for payment for unused sick days.  But the plaintiffs point out that the Agreements each contain a provision reading:

>    2.    Fringe Benefits:
>
>    Any benefit granted to the Reynolds Education Association . . . that is not covered in this agreement shall automatically accrue to administrators covered by this agreement (see Reynolds Education Association . . . contract[]).

Mersereau Decl., Ex. 9, at 1; Ex. 10, at 1.  In turn, the 2006-2009 agreement between Reynolds School District and the Reynolds Education Association provides, in part,

>    4.    Payment for Unused Sick Leave
>
>    The District will make payment for unused, accumulated sick leave for employees retiring under the provision of PERS with the following provisions:
>
>    a.    Payments shall be $50.00 per accumulated sick leave day."

Brown Decl. Att. 18, at 3.

The District argues that because the Administrator Agreement provision regarding Fringe Benefits only applies to benefits "not covered in this agreement," and because benefits available upon early retirement are covered in the Agreement on page 5, the pay for unused sick days provision in the Reynold Education Association agreement does not apply.

I am not persuaded by the District's reasoning.  The plain meaning of the Fringe Benefits clause is that if a specific benefit is not addressed in the Administrator Agreement, but the specific benefit is granted under the Reynolds Education Association contract, then the party signing the Administrator Agreement gets the benefit.  The early retirement provision of the Administrator

29 - OPINION AND ORDER

1    Agreement does not explicitly address payment for unused sick
2    leave.   In order to avoid inclusion of the unused sick leave
3    benefit under the Fringe Benefits clause, the Administrator
4    Agreement must contain explicit language that addresses unused sick
5    leave one way or another.  It does not.  Accordingly, defendants'
6    motion for summary judgment as to this claim is denied.

7        B.   Breach of Covenant of Good Faith and Fair Dealing

8        In general, every contract has an obligation of good faith in
9    its performance and enforcement under the common law.  Elliott v.
10   Tektronix, Inc., 102 Or. App. 388, 396, 796 P.2d 361, rev den, 311
11   Or. 13, 803 P.2d 731 (1990).  "[A] party may violate its duty of
12   good faith and fair dealing without also breaching the express
13   provisions of a contract."   Elliott, 102 Or. App. at 396.   In
14   addition, a claim for breach of the duty of good faith and fair
15   dealing "may be pursued independently of a claim for breach of the
16   express terms of the contract."  McKenzie v. Pac. Health & Life
17   Ins. Co., 118 Or. App. 377, 381, 847 P.2d 879 (1993), rev
18   dismissed, 318 Or. 476, 869 P.2d 859 (1994).  The purpose of that
19   duty is to prohibit improper behavior in the performance and
20   enforcement of contracts, and to ensure that the parties "will
21   refrain from any act that would 'have the effect of destroying or
22   injuring the right of the other party to receive the fruits of the
23   contract.'"  Iron Horse Eng'g v. Nw. Rubber, 193 Or. App. 402, 421,
24   89 P.3d 1249 (2004) (quoting Perkins v. Standard Oil Co., 235 Or.
25   7, 16, 383 P.2d 107 (1963)).  Yet, the duty "cannot contradict an
26   express contractual term, nor otherwise provide a remedy for an
27   unpleasantly motivated act that is expressly permitted by the
28   contract."  Zygar v. Johnson, 169 Or. App. 638, 645, 10 P.3d 326

1  (2000), <u>rev</u> <u>den</u>, 331 Or. 584, 19 P.3d 356 (2001).

2  The duty "does not operate in a vacuum[,]" rather it "focuses
3  on the 'agreed common purpose' and the 'justified expectations' of
4  the parties, both of which are intimately related to the parties'
5  manifestation of their purposes and expectations in the express
6  provisions of the contract." <u>OUS v. OPEU</u>, 185 Or. App. 506,
7  515-16, 60 P.3d 567 (2002).  The common law implied duty of good
8  faith and fair dealing serves to effectuate the objectively
9  reasonable expectations of the parties.  <u>Klamath Off-Project Water</u>
10 <u>Users, Inc. v. Pacificorp</u>, 237 Or. App. 434, 445 (2010).

11 In their complaint, Dunn and Masunaga each simply allege, "By
12 threatening and thereafter initiating plaintiff's dismissal for the
13 purpose of coercing her to pay money, which was not a lawful basis
14 for any adverse employment action, defendant Fisher acted unfairly
15 and in bad faith."  Compl. ¶¶ 56, 66.

16 Without citing any law, the District simply argues that it did
17 not breach the implied covenant of good faith and fair dealing
18 because no one terminated the principals—they resigned.

19 I have already addressed the issue of resignation and held
20 there is a material issue of fact regarding whether the plaintiffs
21 were constructively discharged.  Therefore, on the narrow basis of
22 defendants' motion as to this claim, the District's motion for
23 summary judgment as to this claim is denied.  It remains to be seen
24 what will come of this claim at trial.

25 VI.  <u>Wage Claims</u>

26 The plaintiffs argue that the provision for payment for unused
27 sick leave was compensation within the meaning of ORS 652.150, and
28 that failure to pay compensation for the unused sick leave was in

31 - OPINION AND ORDER

1  violation of the statute.

2  The statute delineates the penalty "if an employer willfully

3  fails to pay any wages or compensation of any employee whose

4  employment ceases, as provided in ORS 652.140 and 652.145." ORS

5  652.150.  In turn, ORS 652.140(1) provides, "When an employer

6  discharges an employee or when employment is terminated by mutual

7  agreement, all wages earned and unpaid at the time of the discharge

8  or termination become due and payable not later than the end of the

9  first business day after the discharge or termination."  "Wages"

10  means "all compensation for performance of service by an employee

11  for an employer whether paid by the employer or another person.

12  Wages include the cash value of all compensation paid in any medium

13  other than cash and all compensation owed an employee by an

14  employer."  OAR 839-001-0410.

15  As discussed above, the Payment for Unused Sick Leave

16  provision in the 2006-2009 agreement between Reynolds School

17  District and the Reynolds Education Association provides that

18  "[t]he District will make payment for unused, accumulated sick

19  leave" in the amount of  "$50.00 per accumulated sick leave day."

20  Brown Decl. Att. 18, at 3.  The sick leave provision expressly

21  provides that employees will be compensated for unused, accumulated

22  sick leave.  Due to the contractual language, such compensation

23  falls within the meaning of "wages" under ORS 652.150.

24  Therefore, defendant's motion for summary judgment as to

25  plaintiffs' wage claims is denied.

26                          CONCLUSION

27  Defendants' motion for summary judgment [#18] is granted, in

28  part, and denied, in part.  Defendants' motion is

32 - OPINION AND ORDER

(1) granted with regard to plaintiffs' § 1983 claims for substantive due process,

(2) granted with regard to procedural due process related to unused vacation days,

(3) denied with regard to plaintiffs' § 1983 claim for procedural due process related to employment,

(4) denied with regard to defendant Fisher's defense of qualified immunity,

(5) granted with regard to plaintiffs' claims for wrongful discharge,

(6) denied with regard to plaintiffs' claims for breach of contract, and

(7) denied with regard to plaintiffs' wage claims.

IT IS SO ORDERED,

Dated this   15th   day of November , 2010.


/s/ Dennis J. Hubel

_____
Dennis James Hubel
United States Magistrate Judge

33 - OPINION AND ORDER